IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                  NO. 09-CR-2806  JC

RONN NATHANIEL HUNTER,

       Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART DEFENDANT'S MOTION TO SUPPRESS**

THIS MATTER comes before the Court on Defendant's Motion to Suppress, filed February 10, 2010 (Doc. 57) ("Motion").  Having considered the Motion, the parties' submissions, the governing authority, and having held a hearing on Thursday, June 17, 2010, I find the Motion well taken in part and it will, therefore, be granted in part.

**I.     Background**

This case arises from the seizure of two duffle bags containing approximately five kilograms each of a substance later determined to be cocaine from coach car number 413 of eastbound Amtrak train number four on the morning of September 2, 2009.  The train was traveling from Los Angeles, California to Chicago, Illinois.  Special Agent (SA) Jarrell Perry and Task Force Agent (TFA) John Clayborne were at the Amtrak Station in Albuquerque, New Mexico to meet the train for its scheduled stop in furtherance of their drug interdiction efforts.  The train was originally scheduled to arrive in Albuquerque at 12:12 p.m. but was running early, which Perry and Clayborne knew in advance.  The train arrived in Albuquerque at 11:20 a.m. and departed at 12:55 p.m.  *See Govt's H'ring Ex. 6*.  Perry and Clayborne were present to meet

the train when it arrived and observed some passengers de-boarding.

When the train arrived in Albuquerque, Amtrak personnel informed passengers that they were permitted to exit the train during the scheduled layover if they so chose. No indication was given to de-boarding passengers that they should take their baggage with them during the scheduled stop or risk having their bags declared "abandoned" by law enforcement, divesting them of their privacy interest and subjecting their bags to a search. Defendant Hunter chose to depart from the train during the layover, leaving his luggage and travel companion (his nephew, Codefendant Carlos) aboard while Hunter walked to the downtown Albuquerque area. Hunter ate, shopped and made several calls from his cellular phone while off the train.

At approximately 11:30 a.m., after watching passengers de-board during the scheduled stop, SA Perry and TFA Clayborne boarded the train to conduct consensual encounters with remaining passengers in furtherance of their drug interdiction efforts. Soon after boarding, SA Perry located a black Fossil brand duffel bag ("Fossil Bag 1") in the overhead compartment of coach car number 413. Given his training and experience, Perry found Fossil Bag 1 suspicious because it was unusually heavy, bore no name tag, and had a lock on it. Perry testified that at approximately 12:30 p.m. he "walked" Fossil Bag 1 through car 413, meaning he held the bag up while he proceeded down the aisle, asking each passenger present if the bag belonged to him or her.[1] Clayborne testified that he could not recall what time Perry walked Fossil Bag 1 through car 413. Each person present on the train at that time verbally disclaimed ownership of Fossil Bag 1. Perry testified that he considered his efforts to determine ownership of Fossil Bag 1 "reasonable," though he knew that some passengers were still off the train. Perry then deemed

---

[1] The precise time Perry "walked" the bag – in relation to when the train was scheduled to depart – was strongly contested.

Fossil Bag 1 "abandoned," took it to the lower level of the train, pierced its zipper and searched its contents. He found five rectangular bundles wrapped in clear, shrink-wrapped plastic which, in his experience, appeared to be cocaine. Perry notified Clayborne who then took the bag to his car, located approximately 50 feet[2] from the train, locked it in the trunk, and returned to the train.

Upon returning to the train, Clayborne informed Perry for the first time that earlier he (Clayborne) had noticed another bag appearing identical to the one he had just placed in the trunk of his car ("Fossil Bag 2"). Fossil Bag 2, said Clayborne, was identical to Fossil Bag 1 in appearance, was unusually heavy, bore no identification, and had a silver Fortress lock on it appearing identical to Fossil Bag 1. Clayborne next informed Perry that he had spoken earlier with a passenger across the aisle from where Fossil Bag 1 was located (Carlos) and that person had told Clayborne he owned a different, rolling bag above him and identified another rolling bag as belonging to his "friend." No follow-up questions were asked of Carlos, such as who the "friend" was or whether Carlos knew if the "friend" intended to return to the train. Fossil Bag 2 was located between the two rolling bags identified by Carlos as belonging to him and his friend. Perry testified that at no time had he noticed Fossil Bag 2. Prior to seeing Fossil Bag 1 and learning of its contents from Perry, Clayborne had not removed Fossil Bag 2 from the overhead compartment or otherwise indicated that he found it to be suspicious.

Next, Clayborne removed Fossil Bag 2 from the overhead compartment and "walked" it through car 413. By then, Defendant Hunter had re-boarded the train and taken his seat.

---

[2]Agent Perry maintained, even when pressed by the Court, that Clayborne's car was located approximately 50-60 *yards* from the train but that it only took Clayborne 2-3 minutes to bring the heavy bag to the car, lock it in the trunk, and return to the train. Clayborne himself testified that the car was parked in a lot approximately 50 *feet* from the train. The Court relies on Clayborne's representation of the distance because Clayborne is the one who actually brought the bag to the car.

Clayborne specifically asked Hunter if Fossil Bag 2 belonged to him and Hunter said "no." After no one claimed Fossil Bag 2, Clayborne removed it to the lower area, popped the zipper with a pen, and searched it. Clayborne found five rectangular bundles inside clear, shrink-wrapped plastic, which appeared to be kilogram-sized bricks of cocaine. Clayborne returned to the upper level with Fossil Bag 2 in his possession.

At the same time, Perry asked Hunter for his consent to search the black suitcase that both Carlos and Hunter had, by then, identified as Hunter's. According to Perry's credible testimony, Hunter said "yeah." Hunter initially asked if everyone's bags had been searched and Perry informed Hunter that others had consented. Hunter testified, though not credibly, that he never responded in any way to Perry's request for permission to search his bag and, instead, left his seat and went downstairs to the restroom. The Court finds, however, that Hunter indeed consented to the search of his suitcase. Perry searched Hunter's bag and in the front compartment he found an open package of Fortress locks with two missing. The locks were identical in size, name, and color to those found securing Fossil Bags 1 and 2. Perry next had a brief, consensual encounter with Codefendant Carlos and subsequently searched the bag that Carlos had identified as belonging to him. Nothing of consequence was located in Carlos' bag. Carlos then went down to the restroom.

At that point, Perry, Hunter and Carlos were all at the bottom of the stairs. Notwithstanding Hunter's testimony that Perry then *ordered* him to empty his pockets, credible testimony from both agents established that Clayborne *asked* Hunter to empty his pockets and Perry *asked* Carlos to empty his pockets. Both Hunter and Carlos voluntarily complied, emptying the contents of their pockets onto some shelves in the area. Hunter had four small, silver Fortress brand keys in his pocket, appearing identical to those in the package of locks

found in Hunter's luggage.  The keys were not actually tried for fit inside the Fortress locks on the Fossil bags until sometime later, at a different location.  Both Hunter and Carlos were quickly arrested and removed from the train.  Their belongings were removed from the seating area and the train departed Albuqerque as scheduled at 12:55.  *See Govt's Hr'ng Ex. 6.*

**II.    Discussion**

As a preliminary matter, I find that Defendant Hunter enjoys standing to challenge the search at issue in this case and, accordingly, the burden is on the Government to establish by a preponderance of the evidence that Hunter abandoned the bags in question.  *United States v. Denny*, 441 F.3d 1220, 1227 (10th Cir. 2006).

*A.    Fossil Bag 1*

Defendant's primary argument presents a question of law.  Hunter contends that Fossil Bag 1 could not have been lawfully declared "abandoned" so as to justify a warrantless search and seizure where not all of the passengers in car 413 were aboard the train.  This is particularly true, claims Hunter, where the train was not scheduled to depart for approximately twenty-five minutes from the time Perry "walked" the bag through car 413 seeking information about ownership.  Defendant relies heavily on the timing of events to attack Perry's credibility, implying that the events could not have occurred as Perry claims because of time constraints.[3]

The Government argues, without supporting authority, that Hunter "harbored a subjective intent to abandon" the bags , or at least their contents, because (1) the bags bore no name tags or indicia of ownership, and (2) Hunter stated to SA Perry after his arrest that "only the Fossil bags

---

[3]Curiously, Hunter's testimony and unauthenticated hearing exhibit D (computer printout of cell phone bills from a phone not shown to be the one Hunter used that day and retrieved by Hunter himself), which I give little weight, would place Hunter on the platform making a cell phone call at 12:54, one minute before the train actually departed.

belonged to him." *United States' Response in Opposition to Defendant's Motion to Suppress at 5.* Further, asserts the Government, even if Hunter had maintained a subjective expectation of privacy, "he relinquished any objectively reasonable expectation of privacy in the bags" because he "left all of his luggage on the train while he toured downtown Albuquerque." *Id.* Again, the Government cites no authority when it abruptly concludes that "the agents [] acted reasonably in relying on the representations of Carlos." *Id.*

A warrantless search of abandoned property does not violate the Fourth Amendment because it is not unreasonable. *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993). "The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object." *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997) (internal quotation marks omitted). "Regardless of an individual's subjective intent or understanding, the individual is treated as having abandoned an object if it would be unreasonable in the circumstances for the person to have an expectation of privacy with respect to that object." *United States v. Burbage*, 365 F.3d 1174, 1178 (10th Cir. 2004) (citing *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995) (although defendant "clearly intended to return and retrieve the bag," in order for the bag not to be considered abandoned, he had to "show more than his subjective intent"– he had to demonstrate that his expectation of privacy was "one that society would recognize as objectively reasonable") (internal quotation marks and ellipsis omitted)).

Undeniably, a person has no opportunity to claim or deny ownership of a bag when he is not present to be asked if the bag belongs to him. Notably, Perry testified to having reviewed the passenger information provided to him by Amtrak and identified Defendant Hunter to be a

passenger with whom he wished to speak *before* the train had even arrived in Albuquerque.[4] It follows – and I hereby find – that after conducting consensual encounters for approximately an hour, SA Perry likely knew Ronn Hunter (along with other passengers) was not on the train and, consequently, Hunter could not claim ownership of Fossil Bag 1 when Perry walked it through coach car 413. This probable knowledge leads me to conclude that suppression of all evidence obtained from the unlawful search of Fossil bag 1 and its fruits is the necessary remedy in this case. I find Perry's conduct to be "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 129 S.Ct. 695, 700 (2009).

   B. *Fossil Bag 2 Abandoned and Consent Given to Search Other Bags*

  The Government claims that the search of Fossil Bag 2 was valid as a matter of law. *Resp. at 6*. I find that Hunter had returned to his seat by the time Clayborne began asking each passenger if Fossil Bag 2 belonged to them and he verbally disclaimed ownership of Fossil Bag 2. I also find the credible testimony at the hearing established that Hunter voluntarily consented to the search of his large black bag and to empty the contents of his pants pockets. I am concerned, however, that Fossil Bag 2 became of interest to Clayborne and Perry only because of the contraband located in Fossil Bag 1 when it was unlawfully searched. Accordingly, I request the parties submit short, concise briefs on what does or does not constitute fruit of the unlawful search of Fossil Bag 1.

**III.** **Conclusion**

---

  [4]While police investigation "does not itself render abandonment involuntary . . . [a] defendant's abandonment of property . . . is not voluntary if it results from a violation of the Fourth Amendment."

I conclude on the specific facts presented in this case that Defendant Hunter had not abandoned his interest in Fossil Bag 1 and the search and seizure was in violation of the Fourth Amendment to the United States Constitution. Perry "walked" the bag at least twenty-five minutes before the train was scheduled to depart, while possessing actual knowledge that not all passengers were aboard and likely even knowing that Hunter was not aboard. Perry's determination was, therefore, not reasonable and the search of Fossil Bag 1 was unlawful. I conclude that Hunter maintained a subjective privacy interest "that society would recognize as objectively reasonable" *United States v. Austin*, 66 F.3d at 1118. Accordingly, the evidence seized and all its fruits must be suppressed.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion to Suppress, filed February 10, 2010 (Doc. 57) is **GRANTED in part** such that the search of Fossil Bag 1 was unlawful and evidence obtained therefrom shall be suppressed;

**IT IS FURTHER ORDERED** that on or before July 14, 2010, the parties are to submit short, concise briefs with supporting authority setting forth their respective positions with regard to what may or may not be fruit of the unlawful search.

Dated July 1, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE