# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                    NO. 09-CR-2806 JEC

RONN NATHANIEL HUNTER,

       Defendant.


## <u>MEMORANDUM OPINION AND ORDER<br>ON EVIDENCE TO BE SUPPRESSED</u>

THIS MATTER comes before the Court on *United States' Brief Regarding Fruit of the Poisonous Tree*, filed July 14, 2010 (Doc. 97) and *Defendant's Brief in Response to Court's Order*, filed July 14, 2010 (Doc. 98). The primary issue for resolution is what, if any, additional evidence must be suppressed as a result of the Court's prior ruling that "Fossil Bag 1" was unlawfully searched in violation of the Fourth Amendment on Amtrak train number four on September 2, 2009, during a layover in Albuquerque, New Mexico. Specifically, the Court must determine whether the Government has met its burden to show that any exception to the exclusionary rule should operate to purge the evidence discovered in "Fossil Bag 2" of the primary taint from the unlawful search of "Fossil Bag 1."

## I.    <u>Background</u>

The relevant factual background is established on the record and does not bear repeating in its entirety here. *See Docs. 94, 96, 97, 99 (Transcript of Hearing on Motion to Suppress).* Following an evidentiary hearing on Defendant's Motion to Suppress, held on June 17, 2010, the Court entered its *Memorandum Opinion and Order Granting in Part Defendant's Motion to*

*Suppress* on July 1, 2010 (Doc. 94) ("Order").  In its Order, the Court found that the warrantless search of the contents of Fossil Bag 1 was unlawful because the bag was not legitimately "abandoned" for purposes of obviating Fourth Amendment strictures.  The Court suppressed the evidence found inside Fossil Bag 1 and requested briefing on what, if any, subsequently discovered evidence was subject to suppression as fruit of the unlawful search.  *See Doc. 94*.  In compliance with the Court's Order, the parties submitted briefs on July 14, 2010.  The Court, having reviewed the briefs, the record, and the governing authority, will suppress the evidence found in Fossil Bag 2 as fruit of the unlawful search of Fossil bag 1.

II.   **Discussion**

A.      **Reconsideration of Suppression of Fossil Bag 1**

As a preliminary matter, in its July 14, 2010 brief, the Government challenges the Court's prior determination that law enforcement action in this case triggers the exclusionary rule and requests reconsideration of its Order suppressing the evidence found in Fossil Bag 1. Specifically, the Government contends that the Court (1) erroneously found that the law enforcement agents had identified Defendant Hunter as a person with whom they wished to speak prior to boarding the train and (2) relied on that erroneous finding to impart to the agents actual knowledge that Hunter was not on the train when Agent Jarrell Perry deemed Fossil Bag 1 abandoned and searched it.  The Government states that "[t]he agents knew nothing of Hunter's identity nor were they suspicious of him while conducting encounters on the train.  The agents had reviewed reservations for passengers other than Hunter."  *United States' Brief Regarding Fruit of the Poisonous Tree* at 1.  The Government then asserts that, to the extent the Court's ruling relied on the erroneous finding, it should reconsider.

The Court has reviewed the Transcript of the suppression hearing and acknowledges its

2

factual error.  In fact, Agent Perry testified in pertinent part as follows:   "He told me that he conducted an encounter with him.  *He was an individual that we wished to speak with on that date*, and that he, the passenger, stated he had another – there was another black suitcase that belonged to his friend."  Hearing Transcript at 16:17-22 (Perry Testimony) (emphasis added).  Reviewed in context, it becomes clear that Perry's testimony referred to what Clayborne conveyed to Perry regarding *Defendant Carlos*, not Defendant Hunter.  On this point, the Court and the record stand corrected, though the Court's previous ruling will remain otherwise undisturbed because the distinction was not critical to the Court's determination.

The hearing testimony established, *inter alia*, that Agent Perry "walked" Fossil Bag 1 at least twenty-five minutes prior to the train's scheduled departure, with the knowledge that not all passengers were on board.  When all passengers present denied ownership, Perry deemed the bag abandoned, pierced the zipper on the bag, and searched its contents.  *See Order* at 2-3.  Though the Court strikes its previous finding that Perry necessarily knew an individual by the name of Ronn Hunter was not aboard, the Court nonetheless finds that Perry knew the owner of the bag was possibly among those individuals off the train for the scheduled stop when he declared the bag abandoned.  The credible facts establish that: (1) the agents had identified Carlos as an individual with whom they wished to speak; (2) Carlos denied ownership of Fossil Bag 1, but indicated he was *traveling with a friend* (who obviously wasn't present on the train); (3) neither Perry nor Clayborne was able to speak with Carlos' "friend" about the bag before Perry declared it abandoned; and (4) the record gives no indication that either agent asked any probative questions or attempted to learn the "friend's" whereabouts or if he would return to the train.

### B.    Suppression of Evidence in Fossil Bag 2

When evidence is obtained in violation of an individual's constitutional rights, the

evidence cannot be used in a criminal prosecution of that individual unless an exception to the
exclusionary rule applies. *See United States v. Calandra*, 414 U.S. 338, 347 (1974). The
exclusionary rule is justified largely by its deterrent effect, which raises questions of law
enforcement culpability. "The exclusionary rule serves to deter deliberate, reckless, or grossly
negligent conduct, or in some circumstances recurring or systematic negligence." *Herring v.
United States*, 129 S.Ct. 695, 699 (2009).

      1.    <u>The Exclusionary Rule Was Triggered</u>

     In order to effect the suppression of evidence found in Fossil bag 2 as fruit of the
unlawful search of Fossil bag 1, Hunter must first show that (1) the search violated his Fourth
Amendment rights; and (2) there is a factual nexus between the illegality and the challenged
evidence. *United States v. Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000). First, the Court has
found the warrantless search of Fossil Bag 1 constitutionally infirm on the facts presented.
Therefore, Hunter has established a violation of his Fourth Amendment rights through the
unreasonable search. Second, a factual nexus between the illegal search of Fossil Bag 1 and the
contraband found in Fossil Bag 2 came to light in the evidentiary hearing. This was
accomplished through (1) Clayborne's testimony that only *after* he learned of the contraband
found in Fossil Bag 1, and carried Fossil Bag 1 forty feet to place it in his vehicle, did he
comment to Perry about – or otherwise act on – having seen a similar bag while inspecting
baggage in car 413 sometime earlier; and (2) Agent Perry's unequivocal testimony that he had
never seen Fossil Bag 2 at all during his baggage inspection in car 413. In this way, the hearing
testimony established that it was the fruit of the unlawful search of Fossil Bag 1 that led Agent
Clayborne to "walk" and then search Fossil Bag 2. These facts are sufficient to create the
requisite nexus, as Hunter "...adduce[d] evidence at the suppression hearing showing the

evidence sought to be suppressed would not have come to light but for the Government's
unconstitutional conduct" and the exclusionary rule is triggered. *Id.*

      2.    <u>Exceptions to the Exclusionary Rule</u>

      Defendant having established the primary illegality of the search of Fossil bag 1, the
question becomes whether the evidence found in Fossil Bag 2 "was come at by exploitation of
that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."
*Wong Sun v. United States*, 371 U.S. 471 (1963). The Government "may avoid suppression by
demonstrating that the evidence (1) would have been inevitably discovered; (2) was discovered
by an independent means; or (3) was so attenuated from the illegality as to dissipate any taint
from the Fourth Amendment violation." *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th
Cir. 2006).

      I.    Inevitable Discovery

      In the words of the Supreme Court,  "[i]f the prosecution can establish by a
preponderance of the evidence that the information ultimately or inevitably would have been
discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence
should be received." *Nix v. Williams*, 467 U.S. 431, 444 (1984). "The inevitable discovery
doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an
independent, lawful police investigation inevitably would have discovered it." *United States v.
Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (internal citation and punctuation omitted).

      Agent Perry testified that he never saw Fossil Bag 2 prior to Clayborne telling him about
it and removing it from the compartment, which occurred *after* the unlawful search of Fossil Bag
1. There is no evidence to indicate that Agent Perry intended to repeat his initial baggage check
in car 413, whereby he might have noticed Fossil Bag 2 and its suspicious properties and,

therefore, inevitably discovered the contraband.  Instead, the evidence indicates that Perry was finished with his initial baggage inspection portion of his interdiction efforts.  Moreover, Clayborne's testimony established that he had seen Fossil Bag 2 during his earlier baggage inspection but told Perry about the bag and took it down from the luggage compartment to seek its owner with the intention of searching it only *after* he learned of the contraband found in the similar bag by way of the unlawful search.  No evidence before the Court indicates that Clayborne harbored any intent to return to Fossil Bag 2 in compartment 413 and proceed with an investigation independent of his learning Fossil bag 1 contained contraband and having occasion to closely observe Fossil Bag 1.

Indeed, as the Government points out, "both agents testified that based on their training and experience, Fossil Bag 2 presented reasonable and articulable facts to support further investigation."  Govt's Brief at 6.  The Government further states, "the agents' training and experience would have led them to ask passengers about the ownership of Fossil bag 2, including the passengers closest to it – Hunter and his nephew."[1]  *Id.*  Yet the facts do not support a finding that either agent had any such intention.[2]  The agents certainly did not testify as such.  The Court cannot, through sheer speculation, reach a sound conclusion that the contents of Fossil bag 2 would have been inevitably discovered absent the violation.  Accordingly, the Government has

---

[1]This statement begs the question why, if these agents are tuned in to the fact that passengers sit close to the bags they own, did Agent Perry seek ownership of Fossil Bag 1, located on car 413, when he knew passengers from car 413 were still off the train?

[2]It is certainly possible, and even feasible, that Clayborne had noticed the suspicious characteristics of Fossil Bag 2 and intended to seek its owner through independent investigation at a later time, perhaps closer to departure time when passengers would likely be aboard. However, Clayborne had every opportunity to communicate his intentions *vis-a-vis* Fossil Bag 2 at the hearing and never so much as implied this was his intention.

not established by a preponderance of the evidence that the inevitable discovery doctrine can operate to preclude suppression of the evidence found in Fossil Bag 2.                    .

II.    Independent Means

"[T]he independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix*, 467 U.S. at 433. The rationale behind the independent source doctrine is that the Government should not profit from its illegal exploitation, nor should it be placed in a worse position than it otherwise would have been had there been no illegal activity. *Murray v. United States*, 487 U.S. 533, 542 (1988). Whether the Government can successfully invoke the independent source doctrine presents a close question.

A source is not independent if "granting the establishment of the primary illegality, [the evidence in question has] been come at by way of the illegality." *Wong Sun*, 371 U.S. at 488. Here, Clayborne's testimony establishes only that *in retrospect* he identified reasonable and articulable facts to support an investigation.  The operative facts indicate that what actually caused Clayborne to investigate Fossil Bag 2 was not the state of the bag when he initially came across it (no name tag, overly heavy, locked), but instead its similarity to the bag in which Perry had discovered contraband through an unlawful search.  The evidence indicates that Clayborne did not *in fact* develop reasonable suspicion for his investigation of Fossil Bag 2 because of his initial observation, but only because of its similarity to Fossil Bag 1.  On the facts presented, the Court concludes that Clayborne "came at it by way of" the unconstitutional search of Fossil Bag 1.  *Id.*  Accordingly, the Government has not met its burden to show that the evidence in Fossil Bag 2 was discovered by independent means.

III.    Attenuation

7

"In considering whether evidence is so attenuated from the illegality as to dissipate any taint, we balance the 'temporal proximity of the fourth Amendment Violation,' any 'intervening circumstances.' and the 'purpose and flagrancy of the official misconduct.'"  *United States v. Torres Castro*, 470 F.3d 992, 999 (10th Cir. 2006) (quoting *United States v. King*, 990 F.2d 1552, 1563-64).

### i.      Temporal Proximity

"There is no bright-line test for temporal proximity."  *Taylor v. Alabama*, 457 U.S. 687, 691 (1982).  No case the Court has uncovered supports a finding that the time lapse in this case, approximately twenty-five minutes, weighs in favor of attenuation.

### ii.      Intervening Circumstances

The Government contends that Hunter's affirmative abandonment of Fossil Bag 2 and subsequent consent for the agents to search his other luggage constitute intervening circumstances supporting attenuation.  The Court does not agree.

Although Hunter denied granting consent to search Fossil Bag 2, the Court has determined that the credible testimony established that Clayborne asked Hunter if Fossil Bag 2 belonged to him and Hunter replied "no."

When preceded by a constitutional violation, consent may be voluntary but still causally connected to prior illegal conduct such that it is invalid.  *United States v. Ward*, 961 F.2d 1526, 1535 (10th Cir. 1992) ("[W]hen an alleged abandonment follows a Fourth Amendment violation, the issue is whether the abandonment of property was voluntary.").  "Voluntary consent, as defined for Fourth Amendment purposes, is an intervening act free of police exploitation of the primary illegality and is sufficiently distinguishable from the primary illegality to purge the evidence of the primary taint."  *United States v. Carson*, 793 F.2d 1141, 1148 (10th Cir. 1986)

("In the context of voluntary consent, we hold that 'exploitation of the primary illegality' means that the police use the fruits of the primary illegality to coerce defendant into granting his consent.).  Here, Defendant Hunter testified credibly at the hearing that when he re-boarded the train shortly before it was scheduled to depart, it was clear to him that an investigation was underway.  Hunter stated, "[w]hile I was sitting there – when I was getting on, the agent – the friend there that I know looked at me and, you know, they were around me and everything, and I could see things were going pretty badly, without words.  And then I looked at my friend and I could see that there were problems."  Tr. at 125:23-25, 127:1-3.  Additionally, Defendant Carlos had been present for the walk-through of Fossil Bag 1 in car 413 and witnessed its removal. Hunter admittedly knew that Fossil Bags 1 and 2 contained incriminating evidence.  On these facts, the Court finds that Hunter's affirmative abandonment of Fossil Bag 2 was not "sufficiently an act of free will to purge the primary taint of the unlawful invasion."  *Wong Sun*, 371 U.S. at 486.[3]

### iii.    The purpose and Flagrancy of the Official Misconduct

As discussed in part A, *supra*, the facts in this case establish that:  (1) the agents had, at some point, identified Defendant Carlos as an individual with whom they wished to speak; (2) when agents spoke with Carlos, he denied ownership of Fossil Bag 1, but also indicated he was *traveling with a friend* who wasn't present on the train; (3) neither Perry nor Clayborne was able to speak with Carlos' "friend" about the bag before Perry declared it abandoned because he was not on the train; the record provides no indication that either agent asked any probative questions

---

[3]Because Defendant Hunter has not moved the Court to suppress evidence found in his non-Fossil Brand luggage, for which he granted agents consent to search, the Court will not address the voluntariness of his consent.

pertaining the "friend" or his whereabouts; Perry walked the bag through car 413 at least twenty-five minutes prior to its departure while knowing that not all passengers were aboard and, in all likelihood, knowing that Carlos' "friend" in particular was not aboard to claim or disclaim ownership; Perry declared Fossil Bag 1 "abandoned" and searched it when it was not reasonable to conclude it was legitimately abandoned.  Given this matrix of operative facts, Perry's conduct in this case exhibited a flagrant disregard for the strictures of the United States Constitution.  The exclusionary rule "is calculated to prevent, not to repair. Its purpose is to deter -- to compel respect for the constitutional guaranty in the only effectively available way - by removing the incentive to disregard it."  *Elkins  v. United States*,  364 U.S. 206, 217 (1960).

Weighing all three factors relevant to an assessment of attenuation, the Court finds the Government has not met its burden to establish that the search of Fossil Bag 2 was sufficiently attenuated from Perry's illegal search of  Fossil Bag 1 to purge the taint.  Nor has the Government established that the evidence in Fossil bag 2 was discovered by independent means or would have been inevitably discovered.  Accordingly, the evidence found in Fossil Bag 2 must be suppressed as fruit of the unlawful search of Fossil Bag 1.

WHEREFORE,

**IT IS ORDERED  that the evidence discovered in "Fossil Bag 2" is suppressed from trial of this matter.**

Dated August 11, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE

10